IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NATHAN EARL AIWOHI, et al., | CIVIL NO. 22-00312 JAO-RT |
| Plaintiffs, | ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A. AND THE BANK OF NEW YORK MELLON'S JOINT MOTION TO DISMISS CLASS ACTION COMPLAINT |
| vs. | |
| BANK OF AMERICA, N.A., et al., | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A. AND THE BANK OF NEW YORK MELLON'S JOINT MOTION TO DISMISS CLASS ACTION COMPLAINT**

Plaintiffs Nathan Earl Aiwohi ("Aiwohi"); Toby Alamoana Keohokapu, Jr. ("Keohokapu"); Darlene K. Ebos, as successive personal representative of the Estate of Barbara Anita Baliguat ("Baliguat"); Susan DeShaw ("DeShaw"); Thomas Johnson ("Johnson"); Maria K. Williams James ("Williams-James"); Lazara A. Rodriguez ("Rodriguez"); and Julie Nicolas ("Nicolas") (collectively, "Plaintiffs") bring this putative class action against Defendants Bank of America, N.A. ("BOA") and the Bank of New York Mellon ("BNYM") (collectively, "Defendants") based on allegations that Defendants violated (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964,

and (2) the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604–05.  Defendants move to dismiss all claims with prejudice.  ECF No. 43 ("Motion").

For the following reasons, the Court GRANTS Defendants' Motion.  ECF No. 43.

## I.   BACKGROUND

### A.   Factual History

#### 1.   Overview

Plaintiffs' 264-page-long Complaint, consisting of over 850 paragraphs, and accompanying 43 exhibits is exactly the type that "impose[s] unfair burdens on litigants and judges" and constitutes a violation of Federal Rule of Civil Procedure ("FRCP") 8.  *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996).  It is also confusing.  But, as far as the Court can discern, the gist of Plaintiffs' lawsuit is that Defendants conspired to:  (1) keep Plaintiffs locked in predatory loan terms and (2) falsify loan records in order to securitize Plaintiffs' loans and ultimately foreclose upon Plaintiffs when they predictably defaulted.

Plaintiffs are current or former mortgagors of residential real property located either in Hawaiʻi or Florida.  *See generally* ECF No. 2.  Plaintiffs' mortgage loans either were originated by Countrywide Bank, N.A. or Countrywide Home Loans, Inc. ("Countrywide"), *see* ECF No. 2 ¶¶ 162, 372, 522, 594, 608, 648, or purportedly transferred to Countrywide.  *See id.* ¶¶ 434, 546, 553, 690.  On

2

or about July 1, 2008, BOA purchased Countrywide's operations.  *See id.* ¶ 163.
At some point, Countrywide, BOA, and/or BNYM serviced Plaintiffs' loans.  *See
id.* ¶¶ 163, 390, 448, 493, 538, 578, 625, 645, 679, 750; ECF No. 2-39.  Plaintiffs'
loans were ultimately bundled into trusts for mortgage-backed securities.  ECF No.
2 ¶¶ 341, 761.

### 2.    *Initial Loan Transactions*

Aiwohi, Keohokapu, Baliguat, Johnson, Rodriguez, and Nicolas were each
sold loans with terms that set, among other things, low initial payments —
sometimes interest-only — which later ballooned.  *See id.* ¶¶ 6, 11, 15, 24, 60; *id.*
at 16 n.2.  Baliguat's, Johnson's, Rodriguez's, and Nicolas's loan terms were so
onerous that each loan "represented a planned foreclosure by Countrywide[1] from
the day it was written."  *Id.* ¶¶ 516, 603, 695, 730.  Rodriguez's loan officer had
"fixed the paperwork" so that she would qualify for her loan, "effectively
predetermining foreclosure from the start."  *Id.* ¶ 60.  Aiwohi, Keohokapu,
Baliguat, Williams-James,[2] Rodriguez, and Nicolas ("FHA Plaintiffs") are all

---

[1]  As noted in the Court's chart, *infra* p. 6, Countrywide was not the originating
lender for either Rodriguez or Nicolas.

[2]  Williams-James is identified as an FHA Plaintiff, but nothing in the Complaint
asserts that she was subject to a "predatory loan."  Demonstrating quite the
opposite from a "planned foreclosure," Williams-James made timely payments.
*See infra* p. 6.

"protected class members" — Aiwohi and Keohokapu are of Hawaiian descent, *id.* ¶¶ 5, 10; Baliguat was of Hawaiian-Portuguese descent, *id.* ¶ 14; Williams-James is African-American, *id.* ¶ 28; Rodriguez is from Cuba, *id.* ¶ 59; and Nicolas is Haitian-American, *id.* ¶ 45 — who were sold these notes.

### 3.    *Loan Modification Attempts*

When Keohokapu defaulted, he sought a loan modification but was denied allegedly based on his race and national origin. *See id.* ¶¶ 11, 834. DeShaw's request to modify her loan was also denied. *See id.* ¶ 20. Plaintiffs also assert that Nicolas was denied a loan modification, but their own records appear to support the contrary. *Compare id.* ¶ 47, *with* ECF No. 2-42 at 31 ("Home Affordable Modification Agreement" made with Green Tree Servicing LLC). They nonetheless argue that BOA had an obligation to modify Nicolas's loan so as to not make it a "predatory loan." ECF No. 2 ¶ 730.

### 4.    *State Foreclosure Proceedings Summary And Litigation Status*

State foreclosure proceedings against each of the Plaintiffs regarding their respective properties were later instituted, as indicated in the following chart:

| Mortgagor | Location of Trial Court | Lender | Case Number and Foreclosure Plaintiff | Date Filed | Record Cites |
|---|---|---|---|---|---|
| Aiwohi | Hawaiʻi | Countrywide Home Loans, Inc. | 5CC131000082, BNYM | 3/12/13 | ECF No. 2 ¶¶ 388, 759; ECF No. 2-17; ECF No. 43-30[3] |
| Keohokapu | Hawaiʻi | First Magnus Financial Corp. | 1CC121001026, BNYM | 4/16/12 | ECF No. 2 ¶¶ 418, 759; ECF No. 2-19; ECF No. 43-29 |
| Baliguat | Hawaiʻi | Countrywide Home Loans, Inc. | 1CC131003138, BNYM | 11/29/13 | ECF No. 2 ¶¶ 529, 759; ECF No. 2-22; ECF No. 43-32 |
| DeShaw | Hawaiʻi | First Magnus Financial Corp. | 1CC161001821, BNYM | 9/27/16 | ECF No. 2 ¶ 759; ECF No. 2-24; ECF No. 43-33 |
| Johnson | Hawaiʻi | Countrywide Home Loans, Inc. | 1CCV190002277, U.S. Bank | 12/6/19 | ECF No. 2 ¶¶ 591, |

---

[3] As explained *infra* Part III.A., the Court takes judicial notice of the various filings from Plaintiffs' state court proceedings that were attached to Defendants' Motion.

| | | | | | 759; ECF No. 2-29; ECF No. 43-35 |
|---|---|---|---|---|---|
| Williams-James | Florida | Countrywide Home Loans, Inc. | 2015-CA-018433, Green Tree Servicing LLC | 8/11/2015 | ECF No. 2 ¶¶ 647, 759; ECF No. 43-5 |
| Rodriguez | Florida | Amnet Mortgage, Inc. | 2009-CA-062378, BNYM | 8/25/2009 | ECF No. 2 ¶¶ 688, 690, 759; ECF No. 43-4 |
| Nicolas | Florida | Popular Mortgage, Corp. | 2019-CA-037059, BNYM | 11/1/2018 | ECF No. 2 ¶ 759; ECF No. 43-6 |

Although Williams-James had always timely paid her mortgage, foreclosure proceedings commenced against her.  *See* ECF No. 2 ¶¶ 29, 34.  Williams-James believed that one of the state court judges who presided over her case "was not fair or impartial, and discriminated against her on account of her race."  *Id.* ¶ 37.  Her home was ultimately sold at auction, but the purchasing entity later demanded its money back after learning, among other things, that Williams-James had never defaulted.  *See id.* ¶¶ 41, 42.  There is currently a pending motion to vacate judgment due to fraud and for sanctions and contempt.  *See id.* ¶ 42.  Williams-

James spent over $30,000 in attorney's fees to prove that she paid her mortgage payments timely. *See id.* ¶ 37.

Rodriguez hired counsel to represent her when foreclosure proceedings were filed against her in 2013. *See id.* ¶ 61. That counsel then signed a consent judgment in favor of BOA allegedly without her consent or knowledge. *See id.* ¶¶ 61–62. Rodriguez later hired new counsel to contest that judgment based on her lack of knowledge and consent; she claims that new counsel also "*again* presented evidence [BOA] forged the endorsement, recorded a false mortgage assignment, committed perjury, ordered the destruction of evidence, backdated records, destroyed the backdated records, defied subpoenas and court orders, and obstructed justice to continue this systemic fraud on the court in foreclosures." *Id.* ¶ 62 (emphasis added). Her efforts failed. *See id.* ¶¶ 64–65. Litigation continues, and Rodriguez is currently "wait[ing] for a hearing to present her evidence of fraud." *Id.* ¶ 68.

The foreclosure cases against Aiwohi, Baliguat, DeShaw, and Johnson remain pending. *See id.* ¶¶ 148, 150, 151, 152; ECF No. 43-3. The foreclosure cases against Williams-James, Rodriguez, and Nicolas are all closed. *See id.* ¶¶ 153–55. The parties dispute whether the foreclosure judgment entered against Keohokapu is final. *See id.* ¶ 149; ECF No. 43-3.

5.     *Scheme*

According to Plaintiffs, Countrywide "targeted" (1) "fraudulent foreclosures for communities of color," and (2) "elderly [A]mericans from communities of color and approved them for loans for which they had no ability to repay." ECF No. 2 ¶¶ 357, 696. Plaintiffs also suggest that the various lawsuits by trustees of mortgage-backed securities in which several of Plaintiffs' loans were bundled, demonstrate that the underwriting and origination of Countrywide's mortgage loans did not conform with established guidelines or the law.[4] *See id.* ¶ 342; ECF No. 2-12.

---

[4] In 2011, BNYM, as trustee for a pool of mortgage-backed securities (which included that containing the loans of Aiwohi, Keohokapu, DeShaw, and Rodriguez) entered into an $8.5 million settlement agreement with BOA/Countrywide, who had sold the loans. The settlement agreement intended to address "past and expected future losses associated with the Mortgage Loans in each Trust" related to BOA's/Countrywide's representations and warranties that the loans were underwritten pursuant to established guidelines and that they originated the loans in compliance with applicable law. ECF No. 2 ¶ 342; ECF No. 2-12.

Similarly, in 2013, investors in mortgage-backed securities (which included the loans of Keohokapu, Rodriguez, and Nicolas) entered into a settlement with Countrywide as to allegations that Countrywide made material misrepresentations and omissions in the securities' prospectuses, based on their "failure to comply with stated underwriting and appraisal guidelines," such that the securities were far riskier than represented. During the foreclosure processes on the loans, it was "revealed that the properties underlying the mortgages were worth materially less than the loans issued to the borrowers, and the borrowers did not have sufficient financial wherewithal to cover the outstanding mortgage balances." ECF No. 2 ¶¶ 501, 502, 708, 752; ECF No. 2-15 at 7–8; ECF No. 2-16.

Plaintiffs claim that during state foreclosure proceedings, the various foreclosure plaintiffs used, or will use, fraudulent documentation to demonstrate they had standing to foreclose. *See* ECF No. 2 ¶ 205. Such documentation includes forged note endorsements (rubber-stamped blank endorsements that were improperly completed at a later time and backdated), false Mortgage Electronic Registration Systems, Inc. ("MERS") mortgage assignments, affidavits containing false statements of fact and omitting other facts relevant to determining the reliability, credibility, and trustworthiness of business records entered into evidence. *See id.* ¶¶ 7, 12, 16, 21, 26, 31, 34, 49, 65, 457. The documentation was "embedd[ed]" into Plaintiffs' loan files by Defendants, *id.* ¶ 786, causing bank trustees, MERS, mortgage-backed security trusts, loan servicing entities, and document fixing entities "to knowingly utilize" the fraudulent information in order to foreclose upon Plaintiffs, because without such information, they would lack standing to foreclose and would therefore not benefit financially. *Id.* ¶¶ 188, 199, 572, 782, 787, 792, 800. To this end, Plaintiffs allege Defendants "frequent[ly] use[d] interstate wire communications, United States mail, and . . . electronic filings in Hawaii Circuit Court foreclosure cases, effecting [sic] multiple districts interstate." *Id.* ¶ 784. According to Plaintiffs, the trial courts' "unwitting" reliance on this fraudulent documentation infects the foreclosure process, and results in

foreclosure judgments and the taking of Plaintiffs' properties, which benefited Defendants financially. *See id.* ¶¶ 456, 797, 798, 804, 805.

## B. Procedural History

Plaintiffs commenced this putative class action on July 19, 2022. ECF No. 2. The Complaint asserts two claims: (1) a RICO claim, *see id.* ¶ 780, and (2) an FHA claim, *see id.* ¶ 831. Plaintiffs request actual and punitive damages, and injunctive relief. *Id.* ¶¶ 823–25. FHA Plaintiffs seek the same relief under the FHA in addition to an attorney's fee and costs. *Id.* ¶¶ 826, 832.

After granting the parties' request to exceed page- and word-count limitations, *see* ECF No. 40, Defendants filed their Motion on October 28, 2022. ECF No. 43. Plaintiffs filed an opposition, and Defendants filed a reply. ECF Nos. 50, 51. Plaintiffs filed a notice of supplemental authority on February 23, 2023. ECF No. 53. The Court held a hearing on the Motion on March 3, 2023. ECF No. 55.

## II.    LEGAL STANDARD

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap.*

10

*Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

11

misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Courts may consider the affirmative defense of res judicata on a Rule 12(b)(6) motion.  *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Holcombe v. Hosmer*, 477 F.3d 1094, 1096–97, 1100 (9th Cir. 2007) (affirming dismissal of claims on preclusion grounds under FRCP 12(b)(6)); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (authorizing dismissal on res judicata grounds when there are no disputed issues of fact).  Because res judicata is typically an affirmative defense raised in a responsive pleading and is therefore more appropriately raised in a Rule 12(c) motion for judgment on the pleadings, a court may exercise its discretion to first address arguments related to a plaintiff's failure to state a claim before proceeding to res judicata arguments.  *See* Fed. R. Civ. P. 8(c), 12(c); *United States v. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) ("There is a well established principle that district courts have inherent power to control their dockets." (internal quotation marks and brackets omitted)).  Although in at least one other circuit res judicata is "jurisdictional in character" and therefore should be raised in a Rule 12(b)(1) motion, *see, e.g.*, *Rizvi v. McClure*, 597 F. Supp. 2d 63, 66 (D.D.C. 2009), the

Court is not aware of Ninth Circuit case law, nor have the parties provided any, that states as much.

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted)).

## III.   DISCUSSION

Defendants primarily argued in their Motion that Plaintiffs could have, and should have, raised their RICO and FHA claims in their respective state court foreclosure proceedings, which were each filed years prior to the commencement of this case.  Thus, they contend, res judicata or collateral estoppel preclude those Plaintiffs whose foreclosure cases are now finalized from advancing them now; and for the claims brought by Plaintiffs whose state court proceedings remain ongoing, that this Court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) (the *Colorado River* doctrine).  *See* ECF No. 43-1 at 23–38, 48–49.  But at the hearing, Defendants focused discussion on their arguments that Plaintiffs wholly fail to allege plausible RICO or FHA violations, and suggested that the Court need not address res judicata issues if Plaintiffs' claims were dismissed for failing to state a claim.  *See id.* at 38–51; 52–63.  Specifically, as to the RICO claim, Defendants emphasize that litigation-related misconduct does not suffice to state a RICO claim as a matter of law and

that Plaintiffs lack standing to challenge any note assignments.  And as to the FHA claim, Defendants highlight that Plaintiffs' fail to show disparate treatment because the Complaint repeatedly alleges that both FHA Plaintiffs and non-FHA Plaintiffs were harmed by the same acts of Defendants, and Plaintiffs fail to indicate any intent to proceed on a disparate impact theory or provide statistics of such impact. Because Plaintiffs could have, yet did not, file an amended complaint once informed of Defendants' arguments at the Rule 7.8 pre-filing conference, Defendants assert that dismissal should be with prejudice.[5]

Plaintiffs argue that neither res judicata nor collateral estoppel applies, as they could not have brought their RICO claims in state foreclosure proceedings because, at least according to Florida law, such claims would have been dismissed under the "litigation privilege."  ECF No. 50 at 20.  Plaintiffs add that because the Hawaiʻi racketeering statute does not encompass fraud, "a meritorious federal racketeering counterclaim could never be raised by a homeowner defending a foreclosure complaint in Hawaiʻi."  *Id.* at 27.  Plaintiffs suggest that this rationale also applies to their inability to litigate their FHA claims in state court, *see id.* at

---

[5]  At the hearing, Defendants directed the Court to page 46 of Plaintiffs' opposition to show that Plaintiffs had conceded that all Plaintiffs had been similarly treated and similarly impacted; but Plaintiffs' brief at that juncture merely recaps Defendants' arguments.  *See* ECF No. 50 at 46.

26, 28, and that in any event, in their view, Defendants do not argue that their FHA claims are subject to claim preclusion, *see id.* at 45 n.15.

At the hearing, Plaintiffs conceded their claims were in need of amendment. For example, they agreed that because BNYM did not service the loans of Johnson and Williams-James, then those Plaintiffs might not have a RICO claim against BNYM.  Further, Plaintiffs appeared to suggest that for those Plaintiffs whose loans were serviced by BNYM, their RICO allegations could have been raised as a defense against BNYM in state court and therefore are precluded now.  Further, Plaintiffs admitted that their Complaint was lengthy and cumbersome.  But, Plaintiffs say, if given the opportunity to amend their Complaint, they would include allegations of extrinsic and intrinsic fraud against the enterprise — which operates under the "cloak" of Bank of America as a "master servicer" — that "fixed" documents after the delivery of the mortgage loans to securitized trusts but prior to the onset of foreclosure litigation.  Plaintiffs also maintained that they adequately stated an FHA disparate treatment claim, but that they would in any event amend their claim to include a disparate impact claim, citing to Congressional statistics and those raised in a City of Miami lawsuit among others. In sum, Plaintiffs emphasized they can cure all deficiencies by amendment.

For the following reasons, the Court GRANTS the Motion, but also GRANTS Plaintiffs leave to amend.

A.     **Judicial Notice And Conversion Of The Motion**

Defendants request judicial notice of the records in the state foreclosure actions against Plaintiffs.  ECF No. 43-1 at 14 n.7.  They attach to their Motion various filings from those state actions, *see* ECF Nos. 43-4 through 43-43, and a chart summarizing those proceedings.  *See* ECF No. 43-3.  Although Plaintiffs' opposition brief asks the Court to "ignore" these filings, or in the alternative, to treat the Motion as a motion for summary judgment, ECF No. 50 at 15, 19, Plaintiffs agreed at the hearing that the Court could take judicial authority of these documents insofar that the documents are not subject to "interpretation."

The Court concurs that it can take judicial notice of the requested documents.  Under FRCP 12(b)(6), review is ordinarily limited to the contents of the complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell*, 266 F.3d at 988.  A Rule 12(b)(6) motion is treated as a motion for summary judgment if matters outside the pleadings are considered.  *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  However, courts may "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a

16

motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  In addition, courts may consider evidence necessarily relied upon by the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448 (citations omitted).

Under Federal Rule of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute" that either "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)–(c)(1).  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citations omitted).

Defendants' Exhibits 1–35 are filings from Plaintiffs' state court proceedings so they are properly the subject of judicial notice.  Plaintiffs' Complaint identifies the case numbers of the various state court proceedings as well as the filing dates for relevant pleadings and motions, *see* ECF No. 2 ¶ 759, and they attach to their Complaint similar underlying court documents. *See, e.g.*,

ECF Nos. 2-17, 2-19, 2-22, 2-24, 2-29.  Additionally, the filings are generally

known within the Court's territorial jurisdiction and "can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  Fed.

R. Evid. 201(b)(2).  Thus, the Court takes judicial notice of Exhibits 1–35 to

Defendants' Motion.  ECF Nos. 43-4 through 43-43.  Because judicial notice as to

the foregoing documents is proper, the Court need not treat the Motion as one for

summary judgment, and the Court declines to do so.  Indeed, references to the state

foreclosure proceedings appear throughout the Complaint and form the heart of

Plaintiffs' present claims.

**B.     RICO Claims**

Plaintiffs allege that Bank of America, in an enterprise involving BNYM

and other loan servicers, schemed to improperly "fix" Plaintiffs' loan files by

forging note endorsements and falsifying MERS mortgage assignments.

Thereafter, during state proceedings, the foreclosure plaintiffs used the "fixed"

loan files to create affidavits containing either false or incomplete statements of

fact, which courts then, together with the "fixed" loan files, "unwittingly" relied

upon in adjudicating foreclosure proceedings.  *See* ECF No. 2 ¶¶ 7, 12, 16, 21, 26,

31, 34, 49, 65, 457.  Plaintiffs' Complaint specifically alleges that the fraud at issue

in their RICO claim was perpetrated in the foreclosure courts.  *See id.* ¶ 209

("Class Plaintiffs allege that use of false, fraudulent, and perjured testimony, for

the purpose of convincing an unwitting trial court judge to enter . . . fraudulent

evidence into evidence . . . *constitutes mail and wire fraud within the meaning of*

*18 U.S.C. §§ 1341, 1343*, as a scheme or artifice *to defraud Class Plaintiffs*."

(emphases added)); *id.* ¶ 759 (listing a "Predicate Acts Matrix" identifying a "false

pretense filing" and the date and location of the filing).

      The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

causing injury to [a] plaintiff's business or property." *United Bhd. of Carpenters*

*& Joiners v. Bldg. & Constr. Trades Dep't, AFL–CIO*, 770 F.3d 834, 837 (9th Cir.

2014) (some internal quotation marks and citation omitted).  A pattern requires at

least two acts of racketeering activity.  *See* 18 U.S.C. § 1961(5).  Further, because

Plaintiffs' RICO claims are based on fraud, these allegations must meet Rule 9(b)'s

heightened pleading standard and state with particularity the time, place, and

specific content of the false representations.  *See* Fed. R. Civ. P. 9(b); *see also*

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).  Further,

"Rule 9(b) does not allow a complaint to merely lump multiple defendants

together[.]" *Swartz*, 476 F.3d at 764–65.  "In the context of a fraud suit involving

multiple defendants, a plaintiff must, at a minimum, identify the role of each

defendant in the alleged fraudulent scheme." *Id.* (citations and alterations

omitted).

Defendants argue that Plaintiffs fail to state a RICO claim because: (1) they fail to state a predicate act of fraud as their allegations turn on litigation activity; and (2) they have not adequately pled an enterprise under RICO. *See* ECF No. 43-1 at 38–50. They also assert that Plaintiffs fail to state a RICO claim against BNYM because there are no allegations that BNYM operated or managed the enterprise. *See id.* at 50–51. Furthermore, the injunctive relief requested by Plaintiffs is barred in the Ninth Circuit. *See id.* at 51–52. The Court addresses the first argument, as it is dispositive.

As pled in the Complaint, there is no question that the alleged RICO predicate acts turn on litigation activity, as Plaintiffs expressly state that the perpetrated fraud was the *filing* of various documents in various identified state cases. *See* ECF No. 2 ¶¶ 209, 759. As Defendants correctly assert, litigation activity, standing alone, is insufficient to state a RICO claim. *See United States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021) (collecting and discussing civil RICO cases) ("If litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings." (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)); *Kim*, 884 F.3d at 104 ("In the absence of corruption, . . . litigation activity cannot act as a predicate offense for a civil-RICO claim." (internal quotation marks and citations omitted)). Notably, it does not

20

appear that courts have categorically foreclosed all RICO actions based on litigation activity when there exists relevant out-of-court acts.  *See Kim*, 884 F.3d at 105 (discussing a case from the Southern District of New York where the court denied the defendants' motion to dismiss RICO claim premised on "massive scheme" of debt-purchasing company, law firm, and process-serving company to buy consumer debt, file actions against them, improperly serve them, but then file fraudulent service documents to obtain default judgments in state court); *but see also, e.g.*, *US Dominion, Inc. v. MyPillow, Inc.*, Civil Action No. 1:21-cv-0445 (CJN), 2022 WL 1597420, at *6 (D.D.C. May 19, 2022) (noting that threatening cease and desist letters, though issued prior to litigation, still constituted "litigation-related activity" that does not constitute RICO predicate act as a matter of law).

At the hearing, Plaintiffs appeared to acknowledge this area of the law, and so asserted that Defendants' predicate acts are actually a mix of both intrinsic and extrinsic fraud, and litigation and non-litigation activity.  But critically, they conceded that they failed to make these allegations clear in their Complaint with Plaintiffs' counsel admitting he could not identify supporting allegations. Plaintiffs also conceded that certain, if not all, of their RICO claims as pled against BNYM were not viable because they either should have been raised as a defense against BNYM at state foreclosure proceedings, or BNYM had absolutely nothing

to do with certain loans.  Thus, Plaintiffs patently fail to state a RICO claim against any of the named Defendants.

The Court notes, however, that Plaintiffs made numerous statements at the hearing (for example, that Bank of America was a "master servicer" of Plaintiffs' loans; or that Plaintiffs are not challenging the validity of assignments; or that Plaintiffs will clarify that Defendants had specific intent to defraud Plaintiffs) that were not alleged in the Complaint, which they assert are critically important to Plaintiffs' RICO claims.  As noted *infra* Part III.E., the Court will grant leave to amend.  However, should allegations such as these not be included in Plaintiffs' amended complaint, the Court will not look favorably upon any additional request for leave to amend based on the same reasons.

For the foregoing reasons, Claim 1 is DISMISSED.

## C.    FHA Claims

Plaintiffs generally assert the FHA Plaintiffs were discriminated against in three ways.  First, as people of color, they were targeted based on their race, ethnicity, or national origin, and sold home loans with payment terms so onerous that foreclosures were intended by their lenders and by consequent loan servicers, including Defendants.  *See* ECF No. 2 ¶¶ 60, 104, 107, 516, 695, 730.[6]  Second,

---

[6]  Defendants contend in their reply that Plaintiffs are attempting to "recast[] their FHA claim to focus on alleged origination-based conduct."  ECF No. 51 at 35.  But

(continued . . .)

they had been denied loan modification because of their race. *See id.* ¶¶ 11, 20, 106.  And third, as people of color, they are a "subset" of Plaintiffs who were affected by the "enterprise" described in Plaintiffs' RICO claim, who foreclosed upon Plaintiffs by using fraudulent documents. *See id.* ¶ 102.  Plaintiffs also make a passing allegation that FHA Plaintiffs were discriminated against because they were also elderly. *See id.* ¶ 306.  But age is not a protected class under the FHA. *See* 42 U.S.C. § 3604.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Id.* § 3604(b).  The Ninth Circuit applies the Title VII discrimination analysis in evaluating FHA claims. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (citation omitted).  FHA discrimination claims may be established "under a theory of disparate treatment or disparate impact." *Id.* (citation omitted).  The Court examines each theory in turn.

### 1.   *Disparate Treatment*

To state a prima facie case of disparate treatment, Plaintiffs must allege that (1) their rights are protected under the FHA and (2) they suffered a distinct and

---

(. . . continued)

as noted, the Complaint, though inartful and confusing, contains several allegations concerning loan origination.

palpable injury as a result of Defendants' discriminatory conduct. *See id.* Discriminatory intent or motive is a requisite element of any disparate treatment claim under the FHA. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (identifying discriminatory intent as a requirement in a disparate treatment claim under Title VII). "A discriminatory motive may be established by the employer's informal decisionmaking or a formal, facially discriminatory policy[.]" *Id.* (internal quotation marks and citation omitted). Here, Plaintiffs' Complaint is wholly devoid of allegations of Defendants' discriminatory intent or motive, and instead merely alleges that there existed "discriminatory loan servicing practices" without explaining what those practices specifically were or that "a discriminatory reason more likely than not motivated the employer." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (internal quotation marks and citation omitted). And neither Plaintiffs' opposition nor their oral argument identifies specific allegations to the contrary. Moreover, although disparate treatment can also be proven using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burdenshifting framework,[7] *see Surrell*, 518 F.3d at

---

[7] If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence showing that the defendant's action was based on a legitimate nondiscriminatory explanation. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). If the defendant does so, the plaintiff then must show that the defendant's proffered reason is mere pretext. *See id.*

1105, to the extent that applies here, Plaintiff's allegation that non-FHA Plaintiffs were treated similarly to FHA Plaintiffs undermines both a prima facie case and any argument of pretext.

### 2.     *Disparate Impact*

"To establish a prima facie disparate impact case, a plaintiff must establish at least that the defendant's actions had a discriminatory effect." *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997) (internal quotation marks and citation omitted). This means that a plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Id.* (internal quotation marks and citation omitted). As to the second element, a plaintiff must "*prove* the discriminatory impact *at issue*; raising an inference of discriminatory impact is insufficient." *Id.* (emphases added) (internal quotation marks and citation omitted).

Here, Plaintiffs wholly fail to allege any proof of a "significant[] adverse or disproportionate impact on persons of a particular type." Although Plaintiffs assert facts that BOA has "historically engaged" in denying mortgage loans to native Hawaiians and that BOA has engaged in a pattern of "reverse redlining," *i.e.*, "the practice of flooding a minority community with exploitative loan products [in

25

violation of the FHA]" since the 1990s, ECF No. 2 ¶¶ 121–22, they at the same time assert that Defendants "engaged in a pattern and practice of servicing and prosecuting predatory and discriminatory mortgage loans sold to minority borrowers *and non-minority borrowers*." *Id.* ¶ 121 (emphasis added).  Plainly, because Plaintiffs allege that both "minority" and "non-minority" borrowers alike were affected by Defendants' practices, their allegations do not proffer that FHA Plaintiffs were significantly *disproportionately* impacted; quite the opposite.

This holds true when examining the allegations as to each Plaintiff.  For example, both Keohokapu (an FHA-Plaintiff) and DeShaw (a non-FHA-Plaintiff) were denied loan modification.  *See id.* ¶¶ 11, 20.  Similarly, Johnson (a non-FHA-Plaintiff) had been sold a loan that was a "planned foreclosure," just as FHA Plaintiffs Aiwohi, Keohokapu, Baliguat, Rodriquez, and Nicolas had been. Notably, however, that Defendants' practices also impacted DeShaw and Johnson is not fatal to a disparate impact claim, as argued by Defendants, *see* ECF No. 51 at 36, because FHA Plaintiffs may still allege facts showing a *significantly disproportionate* impact on the group(s) of persons against whom are being discriminated.  *See, e.g.*, *Gamble*, 104 F.3d at 306 ("[Plaintiff] fails to establish a prima facie case because he has presented no statistics or other proof demonstrating that the [alleged conduct] ha[s] a significantly adverse or disproportionate impact on the physically disabled or elderly.").  Further, that

Plaintiffs refer to allegations in a complaint raised by the City of Miami against

BOA, *see* ECF No. 2 ¶¶ 122–26, in a case that was ultimately voluntarily

dismissed with prejudice, without more, does not amount to the factual allegations

needed here.  *See City of Miami v. Bank of Am. Corp.*, CASE NO: 13-cv-24506-

DIMITROULEAS, ECF No. 142 (S.D. Fla. Jan. 30, 2020) (Order Granting

Plaintiff's Unopposed Motion for Dismissal with Prejudice).  Indeed, simply being

a subset of people affected by Defendants' alleged conduct does not mean FHA

Plaintiffs were disproportionately impacted.

For the foregoing reasons, Claim 2 is DISMISSED.[8]

## D.     **Res Judicata / Collateral Estoppel**

As all claims are dismissed, the Court does not address Defendants' res

judicata arguments.

---

[8]  Defendants also argue that Plaintiffs FHA claims against BNYM as to loan
modification should be dismissed because BNYM, as the securitization trustee,
could *not* negotiate a loan modification because it is the foreclosing trustee, and as
such, it is "neither a party to the note or [deed of trust]."  *See* ECF No. 43-1 at 61
(quoting *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 609 (E.D.
Cal. 2009)).  Plaintiffs failed to address this argument in both their opposition and
at the hearing.  But notably, the Complaint appears to allege that BNYM was at
some point a loan servicer of Countrywide's loans, although it is unclear for which
loans and when.  *See, e.g.*, ECF No. 2 ¶ 163.  The Complaint also does not state
that BNYM was purely a foreclosing and securitization trustee, and so interjection
of that "fact" here by Defendants is not appropriate on a Rule 12(b)(6) motion to
dismiss.  Nevertheless, Defendants' argument highlights why Plaintiffs' Complaint
is so problematic — it fails to explain with specificity which acts are attributed to
which Defendant.

**E.      Dismissal Is Without Prejudice**

In both their briefing and at the hearing, Plaintiffs ask, should the Court find their allegations lacking, that they be given an opportunity to amend their claims. *See, e.g.*, ECF No. 50 at 54–59.  According to Plaintiffs, they will allege the predicate acts and the enterprise of their RICO claim with more specificity and will identify what claims are being made against which defendant.  Similarly, as to their FHA claims, they will clarify their disparate impact claim and provide statistics showing that protected class members were disproportionately affected, referencing Congressional findings among other documents.

Although Defendants make a fair point that Plaintiffs could have earlier filed an amended complaint, for the Court to *require* that they have done so prior to the filing of the Motion (or be subject to dismissal with prejudice now), would place a high burden on Plaintiffs at this early stage of litigation, which is not contemplated by the Federal Rules:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns.  In recognition of these uncertainties, we do not require complaints to be verified, and we allow pleadings in the alternative — even if the alternatives are mutually exclusive.  As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported.  This rarely means that those allegations were brought in bad faith[.]

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007) (citing Fed. R. Civ. P. 11).

      This is not to say that the Court lacks the authority to dismiss a prolix complaint without leave to amend, but extraordinary circumstances must exist. *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("We do not mean to imply that the court has no power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible, or where the substance of the claim pleaded is frivolous on its face." (emphasis added) (citations omitted)); *Masters v. Johnson*, 902 F.2d 1579 (table), 1990 WL 67204, at *1 (9th Cir. May 16, 1990) ("A complaint that fails to comply with Rule 8 may be dismissed with prejudice pursuant to FRCP 41(b). Dismissal is a harsh remedy, however, and we must look to see 'whether the district court might have adopted other less drastic alternatives.' . . . We cannot say with certainty that plaintiffs would be unable to amend their complaint to bring it into compliance with Rule 8. They are entitled to at least one opportunity to do so." (citations omitted)).

      Plaintiffs indeed filed an egregiously long, unnecessarily complex, and confusing complaint. But it is their first complaint in this matter. And while the Court is aware that the cumbersome nature of the Complaint caused defense

counsel to expend an inordinate amount of work and resources on their Motion, because the Complaint is such a tangled web of assertions, it simply does not make sense for the Court to approach it through any lens other than Rule 12(b)(6). Further, the Court notes that there is no assertion by Defendants that Plaintiffs engaged in the conference in bad faith or that the Complaint is frivolous.

On the present record, the Court concludes that dismissal without leave to amend is not warranted.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss, ECF No. 43.  Plaintiffs may file an amended pleading addressing the deficiencies noted above by April 24, 2023.  No new claims or parties may be added without obtaining leave of court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 23, 2023.



Jill A. Otake
United States District Judge

CV 22-00312 JAO, *Aiwohi v. Bank of America, N.A.*; ORDER GRANTING DEFENDANTS
BANK OF AMERICA, N.A. AND THE BANK OF NEW YORK MELLON'S JOINT
MOTION TO DISMISS CLASS ACTION COMPLAINT